## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

**ELISSA SPEER,**                                      :

     **PLAINTIFF,**                              :          Cause No.2:21-cv-01355-RFB-VCF

**vs**

**JEREMY MONDEJAR,**                          :

     **DEFENDANT**                               :
## AMENDED COMPLAINT

The Plaintiff, Elissa Speer, alleges to the best of her knowledge and belief as follows:

### I. Jurisdictional and Venue Allegations

1. The Plaintiff is a resident of Connecticut and did not enter into a written contract with the Defendant, an attorney admitted to practice in Nevada, to represent her in a civil matter known as Danjon Capital Inc v JEM Contracting LLC (latter "JEM") returnable to Clark County Nevada District Court. However, the Attorney-Client relationship did form as a consequence of manifest intent of the Defendant and other events set forth herein.

2. The Defendant's principal office is located at 2148 Idaho Falls Drive, Henderson, NV 89044.

3. Both Parties to the action are residents of different states. The value of the controversy exceeds $75,000 in that the acts complained of resulted in damages to the Plaintiff well exceeding $100,000, including a

1

OCT 3 0 2023

judgment against her as a consequence of negligence and legal malpractice. The Court therefore has jurisdiction pursuant to 28 USC §1332.

## II. Common Facts to All Counts

4. The Defendant (along with JEM) was sued by Danjon Capital, Inc. ("Danjon") as a consequence of a fraudulently induced transaction. Specifically, Danjon had baited the Plaintiff into beccomming a gaurantor on a note secured by real property in Connecticut, but then switched the agreement into a fictitious contract to rent "restaurant equipment", which included ladders, scaffolding, leaf blowers and many items never used in the course of the restaurant industry. The Mortgage and Note related to the true transaction at issue stated the choice of venue for suit was California, and that measures to foreclose or enforce must be taken up in California Courts, and that the terms of interest on the Note were limited to California Law.

5. Danjon purposefully availed itself to file suit in Nevada to evade both Connecticut and California Law pertaining to usury.

6. The Defendant was retained to represent JEM. The Plaintiff initially represented herself, *pro se*.

7. The attorney-client agreement between the Defendant and JEM evolved to first implicitly and then explicitly represent the Plaintiff as evidenced by

2

the July 18, 2018 transcript attached hereto as Exhibit A.

8.  The initial scope of mission per the Attorney Client Agreement was to file a motion to dismiss for lack of both in personam and subject matter jurisdiction.

9.  Over the course of time during the relationship between JEM and the Defendant, the former of which the Plaintiff was the principal, the Plaintiff (1) sought advice from the Defendant as and attorney, (2) the advice or assistance sought pertained to matters within the Defendants professional competence, and (3) the Defendant expressly or impliedly agrees to give or actually gives the desired advice or assistance.

10. During this evolution of the Defendant's relationship with the Plaintiff: (a) Defendant volunteered his services; (b) Defendant agreed to investigate the case and provide advice; (c) Defendant previously represented the Plaintiff's company; (d) Defendant provided advice (e) his fees were paid; (f) the consultation was made in confidence that included the transmission of documents and writings to which the Plaintiff was a party; and (g) and the Defendant reasonably believed that she was consulting the Defendant in a professional capacity – especially after the Defendant's pronouncement that this was the case in open Court.

11. After this relationship evolved by mutual assent, the Defendant never disaffirmed it, nor did the Plaintiff release him from it.

3

12. After this relationship evolved by mutual assent, the Plaintiff ceased getting mail and notices from the Court, and accordingly, was unable to respond to any of them.

13. After this relationship evolved by mutual assent, the Court staff ceased speaking to the Plaintiff because she was represented by the Defendant.

14. After this relationship evolved by mutual assent, the Plaintiff's filings were all stricken as "fugitive pleadings".

15. In exchange for all of the above, the fee was paid.

16. The Nevada Rules of Civil Procedure require that a motion to dismiss for lack of in personam jurisdiction be filed prior to an answer to the Complaint. The Defendant first filed an answer to the complaint and therefore waived the in personam jurisdiction challenge on behalf of the Plaintiff and JEM.

17. In subsequent hearings, the Defendant professed to the Court that he represented the Plaintiff.

18. Subsequent to those representations, Defendant, in the course of actively representing the Plaintiff, failed to inform her of pending discovery requests, pending motions for default and pending attempts at summary judgment.

19. Various circumstances, including lack of access to district court records and COVID-19, delayed informational awareness and the ability to bring

4

the following causes of action set forth herein.

20. Prior to June 13, 2018 the Defendant represented to the Nevada District Court that he represented the Plaintiff.

21. The transcript of the June 13, 2018 proceedings indicates that the Plaintiff was precluded from speaking on her own behalf as a consequence of the Defendant's active representation of her (Transcript, Exhibit A).

22. Exhibit A also reflects that the Defendant did not check his spam folder, which precluded a timely response to a motion for summary judgment directed against the Plaintiff, to which no timely response was made as a consequence thereof.

23. Exhibit A further indicates that, as a direct consequence of the Defendant's representations to the State Court that he represented the Plaintiff, all of her pleadings were striken from the record as "fugitive" pleadings, foreclosing any realistic opportunity for the Plaintiff to have a fair and full day in court and to preserve all of her rights to procedural and substantive due process. By extension, the Nevada Appellate and Supreme Court were without a sufficient Record to adequately or fairly review the Plaintiff's claims.

24. As a direct consequence of the Defendant's representations to the State Court that he represented the Plaintiff and intervening procedural events

5

prior to retention of new counsel, successor Counsel Brandon Phillips

was unable to remediate the JEM's and the Plaintiff's State Case such

that it would result in a favorable outcome.

25. As a direct consequence of the Defendant's representations to the State

Court that he represented the Plaintiff and intervening procedural events

. prior to retention of new counsel, successor Counsel Brandon Phillips

was unable to present evidence that Danjon Capital, Inc's case against

the Plaintiff was based on a fraudulent bait-and-switch wherein Danjon

induced the Plaintiff into executing an agreement for a residential

mortgage but then made her execute the restaurant lease equipment

agreement Danjon later sued upon in State Court.

26. As a direct consequence of the Defendant's representations to the State

Court that he represented the Plaintiff, malpractice, professional

negligence and intervening procedural events prior to retention of new

counsel, successor Counsel Brandon Phillips was unable to present

evidence that Danjon Capital, Inc's case against the Plaintiff was truly

precluded by the language in the Note (Exhibit B) stating that it was

governed by California Law.

**III. Specific Counts**

**COUNT ONE: NEGLIGENCE**

27.  The Defendant failed to honor his duty of care to: (a) keep the Plaintiff

properly informed of pending discovery requests; (b) keep the Plaintiff properly informed of his ever expanding scope of mission purportedly on her behalf; (c) keep the Plaintiff properly informed of various defaults for failure to comply with Local Rules in the offing; and (d) promptly respond to motions directed to the Plaintiff, and check his spam folder along with the electronically available docket necessary to the extent necessary to do adequately do so such that Defendant would keep abreast of filings and procedural matters in the case.

28. As an Attorney, the Defendant failed to honor the standard of care and professional obligations of the forum.

29. As a consequence of the Defendant's failure to honor his duties, the Plaintiff suffered injury and substantial detriment, which included impaired credit but also a judgment obtained by fraud upon the Clark County District Court.

30. The Defendant's radical departure from his duties of care enumerated herein were of such a duration, degree and magnitude that no successor Counsel or self representations could have reasonably reversed the course and trajectory of the State Court Proceedings that otherwise would have terminated in the Plaintiff's favor.

**COUNT TWO: LEGAL MALPRACTICE**

31. The Defendant failed to honor his duty of care to: (a) keep the Plaintiff

properly informed of pending discovery requests; (b) keep the Plaintiff

properly informed of his ever expanding scope of mission purportedly on

her behalf; (c) keep the Plaintiff properly informed of various defaults for

failure to comply with Local Rules in the offing.

32. As an Attorney, the Defendant failed to honor the standard of care and

professional obligations of the forum.

33. As an Attorney, the Defendant failed to prosecute the scope of his limited

assigned mission in the correct procedural order, which he failed to do,

and as a consequence, which caused the Plaintiff to lose her ability to

challenge the District Court's assertion of personal and subject matter

jurisdiction over her.

34. As a consequence of the Defendant's failure to honor his duties, the

Plaintiff suffered injury and substantial detriment, which included

impaired credit but also a judgment obtained by fraud upon the Clark

County District Court.

35. NRS §11.207(1) provides that a malpractice action against an attorney

must be initiated within four years after the plaintiff suffers damages and

discovers, or through the use of reasonable diligence should have

discovered, the material facts constituting the cause of action. The

Plaintiff has been forced as a consequence of the Defendant's

malpractice and negligence, to attempt to challenge judgments below

8

that are predicated upon his failure to have done due diligence, met

deadlines, timely informed the Plaintiff of events and otherwise followed

procedure, and said attempts began in 2018 with the substantive

discovery of the errors. This is within the four year statute of limitations,

as the Defendant concealed the errors complained of from the Plaintiff.

36. The Defendant had a duty of care to use such skill, prudence, and

diligence as other members of the legal profession commonly possess

and exercise.

37. The Defendant breached that duty in the aforementioned ways.

38. The sole proximate causal connection between judgment and attendant

expenses and damages related thereto in the Danjon v JEM matter were

caused by the aforementioned conduct resulted in actual loss or damage

resulting from the Defendant's negligence.

WHEREFORE, the Plaintiff claims:

A. Costs

B. Damages

C. Attorney Fees

THE PLAINTIFF:

_Elissa Speer_                                 Dated this 26 day of October, 2023
Elissa Speer
PO Box 652
Norwich, CT 06360

9

# EXHIBIT A – TRANSCRIPT OF JULY 13, 2018 PROCEEDINGS

Electronically Filed
2/10/2023 8:15 AM
Steven D. Grierson
CLERK OF THE COURT

**RTRAN**

DISTRICT COURT

CLARK COUNTY, NEVADA

| | | |
|---|---|---|
| DANJON CAPITAL INC., | ) | CASE NO. A-17-751487-C |
| Plaintiff, | ) | DEPT. NO. IV |
| vs. | ) | |
| JEM CONTRACTING CO LLC, et al., | ) | |
| Defendants. | ) | |

BEFORE THE HONORABLE JUDGE KERRY EARLEY,

DISTRICT COURT JUDGE

WEDNESDAY, JUNE 13, 2018

***RECORDER'S TRANSCRIPT OF PROCEEDING:***

***ALL PENDING MOTIONS***

APPEARANCES:

For the Plaintiff:          KENNETH E. HOGAN, ESQ.

For the Defendants:
JEM Contracting Co LLC      JEREMY G. MONDEJAR, ESQ.
Elissa Speer               Pro Se

RECORDED BY:  SHARON NICHOLS, COURT RECORDER

1          Las Vegas, Nevada; Wednesday, June 13, 2018

2              [Proceeding commenced at 10:22 a.m.]

3          THE COURT CLERK:  Danjon Captial versus JEM

4    Contracting Company, case A751487.

5          THE COURT:  Okay.

6          MR. MONDEJAR:  Good morning, Your Honor.

7          THE COURT:  Good morning, appearance for the record.

8          MR. MONDEJAR:  Jeremy Mondejar on behalf of JEM

9    Contracting.  I believe Elissa Speer is on the telephone.  She is going to

10   appear telephonically.  She's doing that from --

11         THE COURT:  Is she there on the phone?

12         MR. MONDEJAR:  -- New Hampshire.

13         THE COURT CLERK:  She was.

14         MS. SPEER:  Yes.

15         THE COURT:  Okay.  She's here.

16         MS. SPEER:  Yes I am.

17         THE COURT:  Ms. Elissa Speer is here Pro Se, and counsel.

18         MR. HOGAN:  Ken Hogan on behalf of the Plaintiff, Your

19   Honor.

20         THE COURT:  Alright, on behalf of Danjon Captial Inc.

21         Okay, we have on Defendant's motion to oppose entry of

22   order, motion to set aside order approving summary judgment and

23   motion to reset hearing.  And that Defendant is JEM, correct?  And that's

24   you.

25         MR. MONDEJAR:  Yes.

2

1      THE COURT:  You're representing JEM.

2      MR. MONDEJAR:  Yes.

3      THE COURT:  You are not representing Elissa Speer.  I was

4  very -- she is doing herself, correct?

5      MR. MONDEJAR:  That's right, Your Honor.

6      THE COURT:  Okay, we have that.

7      We have Defendant Elissa Speer's motion the same motion

8  almost word for word.  And we have Plaintiff's opposition and Plaintiff's

9  countermotion to strike the two Defendants' motions, correct?

10     MR. MONDEJAR:  Yes, Your Honor.

11     THE COURT:  I'm ready, I've read it all.

12     MR. MONDEJAR:  We have not been served -- either the

13  motion --

14     THE COURT:  With what?

15     MR. MONDEJAR:  -- the motion for summary judgment and I

16  haven't even received the last two responses myself. So I'm speaking

17  on --

18     THE COURT:  Hold on.  I even asked my law clerk were they

19  served with the summary judgment.  Remember Austin? And you said

20  yes.  I don't know if I'm psychic but I asked that exact question.  Did you

21  not tell me it -- because that was one of my questions?  You're saying

22  you never got served?

23     MR. MONDEJAR:  For the -- I never received --

24     THE COURT:  You're talking about the summary judgment

25  that you filed no opposition on?

3

1          MR. MONDEJAR:  Yes the summary judgment on the motion.

2          THE COURT:  Okay, hold on.  I did ask for that.  Is there

3   service?

4          MR. HOGAN:  There was, Your Honor.

5          THE COURT:  Okay, thank you.  I thought so --

6          MR. HOGAN:  It's Exhibit 4 --

7          THE COURT:  -- because I did ask that.

8          MR. HOGAN:  -- to the opposition.

9          THE COURT:  What?

10          MR. HOGAN:  Exhibit 4 to the opposition.

11          THE COURT:  Okay.  So what's going on here?  Did you look

12   at his Exhibit 4?  Did you get service?  Because you can't say you didn't

13   when you did.

14          MR. MONDEJAR:  Exhibit 4 of this --

15          THE COURT:  The opposition.  I got it here, let me see.

16          MR. MONDEJAR:  When was it served?

17          THE COURT:  That was my first question.

18          MR. MONDEJAR:  Yeah, and I can't really speak on behalf of

19   Elissa Speer, I'm not sure --

20          THE COURT:  I'm asking you for JEM.

21          MR. MONDEJAR:  Okay.  Where was it?

22          THE COURT:  Because I did ask about service on both.  Here

23   it is notification of service.  Here you go, you want to come up and look

24   at it, sir?

25          MR. MONDEJAR:  May I?

1      THE COURT:  Yes, you certainly can because I want the

2  record clear.  Go ahead, sorry.  I got it.

3      MR. MONDEJAR:  I don't know why it's -- okay that was --

4      THE COURT:  That is the first thing I look at when someone

5  files what you did.  So yes you did have service for the record, and it's

6  part of the record.  Both the service for it and it was in Exhibit 4.  So,

7  okay what else do you have in argument then substantively?

8      MR. MONDEJAR:  Well, that we haven't been served and that

9  we --

10      THE COURT:  No you were served, there's proof of service,

11  so that's not correct.

12      MR. MONDEJAR:  For the --

13      THE COURT:  Summary judgment.  You were served with

14  that.

15      MR. MONDEJAR:  I was.  On May 10th, Your Honor?

16      THE COURT:  You just looked at it.

17      MR. MONDEJAR:  Okay.

18      THE COURT:  Do you want me to pull it up again, Exhibit 4?

19      MR. MONDEJAR:  No, it's just that --

20      THE COURT:  It's May 10th, 11:14 a.m. Pacific Standard Time.

21      MR. MONDEJAR:  -- see if I received it by email.

22      THE COURT:  Well.

23      MR. MONDEJAR:  May 10th, Your Honor?  I appreciate your

24  patience, Your Honor.

25      THE COURT:  No, that's fine.

1    MR. MONDEJAR:  I just want to double check.

2    THE COURT:  But as you know under NRCP and local rules

3    proof of service is a certain way -- that is an acceptable proof of service.

4    Whether you looked at it or saw it, I don't know.  But what I have to look

5    at is whether it was a legal proof of service.

6    MR. MONDEJAR:  Right.  Okay looks like there was

7    something that was sent to me and went into my spam on May 10th.

8    THE COURT:  Well, you're going to have to fix your spam

9    because legal documents --

10    MR. MONDEJAR:  Yeah.

11    THE COURT:  -- okay but anyway, okay so for the record --

12    MR. MONDEJAR:  That was the -- it says here the filing

13    description was the Plaintiff's opposition to Defendant's motions to

14    oppose entry of order.  So these are the oppositions, the records I have

15    -- yeah I have the oppositions.

16    THE COURT:  Okay, well I have in the pleadings a legal proof

17    of service that your client -- you were served on behalf of your client.

18    Which -- when you make, as you know, under the local rules when you

19    make an appearance then all pleadings and all motions are served on

20    you that that was done.

21    MR. MONDEJAR:  Okay.

22    THE COURT:  Okay?  So if you somehow want to do a motion

23    to set aside saying I was served but I have another reason.  But you

24    were served, okay?  Alright, and here's the other thing, sir, JEM wasn't

25    part of the summary judgment.  There's a default against your client.

1        MR. MONDEJAR:  Right.

2        THE COURT:  Your client has a default so you have no

3  standing whatsoever to oppose a motion for summary judgment on

4  behalf of a Defendant you're not representing.  That's how civil

5  procedure works, right?

6        MR. MONDEJAR:  Right.

7        THE COURT:  So you have no standing, you can do no

8  pleadings on behalf of JEM until you set aside the default that was

9  entered in this case.  And you have not done that yet.

10       MR. MONDEJAR:  I see.

11       THE COURT:  That's how it works, okay.  So they did a

12  default, okay.  So as to you -- Defendant JEM Contracting's motion to

13  oppose entry of order, motion to set aside order approving summary

14  judgment and motion to reset hearing, the Court finds that such motions

15  are improper and procedurally barred as JEM Contracting Company has

16  been defaulted for approximately a year.  And Defendant has not moved

17  to set aside that default.

18       Therefore, Defendant's motion is -- I'm calling it a fugitive

19  document because you have no standing to do that and I am striking

20  Defendant JEM's -- I'm going to go ahead and strike it, because you

21  haven't set aside.

22       Okay, now we have Ms. Speer's substantive motion.  Do you

23  want to add, Ms. Speer, anything to your filed motion?

24       Is she there?

25       MS. SPEER:  Yes.

1      THE COURT:  Okay, sorry, it's so hard.  I'm just looking at a

2  telephone base.  But, yes, ma'am.

3      MS. SPEER:  Yeah, there was -- I didn't receive no service

4  either at 50 Sunnyside Ave. or PO Box 652 in Norwich, Connecticut.

5      THE COURT:  Okay.  You did not receive any service.

6  There's proof of service.

7      MS. SPEER:  No.

8      THE COURT:  There is a proof of service that you were

9  served, ma'am, with the summary judgment.

10      MS. SPEER:  Where?

11      THE COURT:  Through your counsel.  He represented her at

12  the time.  You're counsel Mr. --

13      MR. HOGAN:  Your Honor, in my mind he still represents her.

14  There's been no notice of withdrawl --

15      THE COURT:  I know.

16      MR. MONDEJAR:  Your Honor, --

17      THE COURT:  -- I said the same thing.  So when you came,

18  here's what happened, because I went back.  When you first made an

19  appearance in this you said I am here only on behalf of Elissa Speer,

20  remember?  And I said are you -- because I went back and looked

21  through my notes, are you representing JEM Contracting Company.

22  You said no, I am not representing them, I still have to talk to see if I'm

23  retained.  That was in the minutes of the last hearing.

24      MR. MONDEJAR:  That's right.

25      THE COURT:  So then after that you were on record -- that's

1    why I'm surprised she's on the phone but I assumed that since then you

2    have withdrawn.  So let me finish for my record because I need to make

3    sure I have a clear record.  So I don't know why she's Pro Per, it says

4    the only one Pro Se, the calendar says Pro Se.  I'm not sure how that

5    worked because that's not true, it's the reverse of what's on our

6    calendar, but I've had some clerk issues.

7        Not you, okay.  Don't take offence.  Not you, but I have had

8    some clerk issues which is why this Court takes her own notes to make

9    sure what happens and I make sure.

10        So at the time you came you represented her.  Okay, so now

11    if you're representing JEM, which you have not done a motion to do, if

12    you are, which that's fine, you haven't.  But if you're -- you've now made

13    an appearance for them and you -- just let me finish okay.  And you've

14    filed on behalf of them so you're now attorney of record for JEM,

15    because once you file something on their behalf you're now their

16    attorney.

17        Okay, you represented to this Court that you were her --

18    Elissa Speer's attorney, you did.  I'm sorry.  I don't know if you don't

19    remember, but I have the minutes, so then you were served with that,

20    because under the local rules you can serve someone represented.  So

21    she was served by serving you.

22        MR. MONDEJAR:  At the time my understanding was that,

23    she had to have -- they had to have counsel for JEM because they

24    cannot do that Pro Per, Pro Se and that --

25        THE COURT:  Correct, and I said are you representing them

9

1 | and you representing them and you said no not at this time, I may but

2 | not at this time.

3 |       Am I correct counsel?

4 |       MR. MONDEJAR:  I thought --

5 |       THE COURT:  You were here.

6 |       MR. HOGAN:  You are correct, Your Honor.

7 |       THE COURT:  Okay.

8 |       MR. HOGAN:  And if you reference Exhibit 2 to the opposition

9 | --

10 |       THE COURT:  Okay, I'm looking at it.  Okay.

11 |       MR. HOGAN:  The order that was actually granted on that

12 | hearing --

13 |       THE COURT:  Okay.

14 |       MR. HOGAN:  -- says exactly that --

15 |       THE COURT:  Okay.

16 |       MR. HOGAN:  -- and it's signed by Mr. Mondejar.

17 |       THE COURT:  Okay, so there is no --

18 |       MR. HOGAN:  So --

19 |       MR. MONDEJAR:  What order is that?

20 |       THE COURT:  -- dispute that's in the record.

21 |       MR. MONDEJAR:  Your Honor, my understanding was that

22 | she's representing herself --

23 |       THE COURT:  That is not true.

24 |       MR. MONDEJAR:  -- on this matter.

25 |       THE COURT:  That is not what's in this Court.  She is not.

1    That's why I'm -- I don't know why the calendar is done wrong --

2                MR. MONDEJAR:  Well that's --

3                THE COURT:  -- but the calendar the way it's done has no

4    legal authority whatsoever.  It's the minutes and what the orders of the

5    Court are.  So I'm asking that that be -- she should not even be on the

6    phone representing herself.  As a courtesy I let her, so she'll understand

7    what's going on.

8                But Mr. -- how do you say your last name, by the way?

9                MR. MONDEJAR:  Mondejar, yeah --

10               THE COURT:  I hate to --

11               MR. MONDEJAR:  -- it was my understanding that she's

12   representing herself in this case and --

13               THE COURT:  She is not.  You came to this Court and made

14   an appearance on her behalf, and you're representing her.

15               MR. MONDEJAR:  When was this order, may I ask?

16               THE COURT:  Are you asking to withdraw now you can?  But

17   you're representing her as the -- and there's an order to that effect.   I'm

18   only as a courtesy so she'll understand what going on because I -- when

19   people think they're Pro Se I want -- so that is not true.

20               MR. MONDEJAR:  Because I -- my understanding was way

21   back --

22               THE COURT:  You need to clear this up.

23               MR. MONDEJAR:  -- in August or last year was when she was

24   representing herself and then I'm representing JEM.

25               THE COURT:  That's not true.  That is not what you said to

11

1    this Court and that's not --

2            MR. MONDEJAR:  When -- may I ask when -- Your Honor, for

3    clarification when that was at?

4            THE COURT:  Do you want to show him the orders?

5            MR. HOGAN:  I can read --

6            THE COURT:  Did you look at his opposition by any chance?

7    You can --

8            MR. MONDEJAR:  May I?

9            MR. HOGAN:  Did you read the opposition?

10           MR. MONDEJAR:  I -- like I said -- I --

11           MR. HOGAN:  It's in Exhibit 2.  Let me read from the order --

12           THE COURT:  Okay.

13           MR. HOGAN:  -- that was entered.  The motions came on for

14   hearing May 31, 2017.  Jeffrey Hulet appeared on behalf of Plaintiff --

15           MR. MONDEJAR:  May 31?

16           MR. HOGAN:  -- Jeremy Mondejar, Esq. made his initial

17   appearance on behalf of Defendant Speer.  And then the next one, it is

18   hereby ordered that Plaintiff's motion is granted in part as to Defendant

19   JEM because it was not represented.

20           THE COURT:  Correct, there was no representing here.  And I

21   said to you, you need to tell her that her company -- she cannot

22   represent Pro Per a corporation under the local rules.

23           MR. HOGAN:  And then Plaintiff --

24           THE COURT:  And I know I said that because I always say

25   that.

1    MR. HOGAN: -- you're correct.  And Plaintiff withdrew the

2    motion to strike as to Defendant Speer due to the appearance of Mr.

3    Mondejar on Defendant Speer's behalf.  There it is again, and then it is

4    signed by Jeremy Mondejar.

5    THE COURT:  Okay --

6    MR. HOGAN:  And entered by the Court.

7    THE COURT:  -- well that is what the minutes -- I even went

8    back and looked at the JAVS because as you know we have a recording

9    of everything just to make sure and that's exactly what happened.  So --

10   MR. MONDEJAR:  May I --

11   THE COURT:  -- the official record of the Court --

12   MR. MONDEJAR:  Okay.

13   THE COURT:  -- just so -- I'm just telling you where we're at,

14   okay?  If you had a different understanding of what you were doing, I'm

15   sorry I thought we made it --

16   MS. SPEER:  Excuse me, Your Honor --

17   THE COURT:  -- as clear as one can.

18   Yes, ma'am.

19   MS. SPEER:  Excuse me, Your Honor, I'd just like to say the

20   note says California law jurisdiction.

21   THE COURT:  I don't know what you're reading, ma'am.

22   MR. MONDEJAR:  She's talking about the loan.

23   MS. SPEER:  The note of the loan.

24   THE COURT:  She's talking about what?

25   MR. MONDEJAR:  The promissory note, I think.

13

1        THE COURT:  Oh, the promissory note is -- okay --

2        MS. SPEER:  The note of the loan.

3        THE COURT:  -- that's fine but that has -- that is not --

4  unfortunately, Ms. Speer that is not relevant to the rulings I'm making

5  today.  So as to Defendant Elissa Speers substantively identical motion

6  to oppose entry of order, motion to set aside an order approving

7  summary judgment and motion to reset hearing, the Court finds that

8  Defendant Elissa Speer has -- is represented by counsel Jeremy

9  Mondejar and may not file pleadings on her own behalf pursuant to

10  EDCR 7.20 and NRCP 4.2.

11        Ms. Speer's pleading is thus a fugitive document and I hereby

12  strike that.  Further, beyond the procedural bars applicable to the

13  motions, the Court finds there is no substantive factual or legal basis to

14  grant either motions.  Therefore, Defendant's motions are denied in their

15  entirety.

16        Plaintiff's countermotion for -- to strike Defendant's motions is

17  moot at this time, because I addressed both procedural bar and

18  substantively I went a step further that it was no basis.  So I'm not going

19  to strike them because I made substantive rulings on them and said that

20  they're denied.  So I -- does that make sense?  That's how I did it.

21        MR. HOGAN:  It does, Your Honor, thank you.

22        THE COURT:  To make sure my record is clear, okay.

23        MR. HOGAN:  We'll lay it out that way. Or --

24        THE COURT:  Okay, you understand what I'm saying.  If you

25  do the order, that's why I did it.

1      MR. HOGAN:  I do, Your Honor.

2      THE COURT:  Okay, now let me clear something up.  Are you

3  still counsel for Ms. Speers?  Or is she -- are you doing a motion -- orally

4  motion to withdraw as her counsel at this time?

5      MR. MONDEJAR:  Yes, Your Honor.

6      THE COURT:  Okay, so Ms. Speers, Mr. Mondejar's --

7      MS. SPEER:  Yes.

8      THE COURT:  -- or -- I'm sorry, let me -- do you oppose that

9  or do you want him still to represent you in this litigation?

10      MS. SPEER:  I need representation.

11      THE COURT:  Okay, so do you want to oppose?  Because he

12  wants to withdraw, the basis for your withdrawl is -- hold on, let me see if

13  I can -- ferret the --

14      MR. MONDEJAR:  Here is my understanding from the very

15  beginning I was just representing JEM.  She is very far away on the

16  other side of the country.  So --

17      THE COURT:  Okay, alright so -- and so --

18      MR. MONDEJAR:  This has been quite, you know, a

19  challenge --

20      THE COURT:  Okay.

21      MR. MONDEJAR:  -- in that respect, so.

22      THE COURT:  Alright, I'm going to grant his oral motion to

23  withdraw as your counsel.  Ms. Speers, let me do this, you're Pro Per

24  right -- you are now at this point Pro Per.  I certainly will give you

25  whatever time you need, you know, before -- I'm going to give like a --

1   let's do a status check maybe in 45 days to see if you've been able to

2   retain as counsel.  Because I like -- I want to give you a chance --

3          MS. SPEER:  Okay.

4          THE COURT:  -- so I'm going to do a status check in 45 days

5   which is --

6          THE COURT CLERK:  July 25th at 9 a.m.

7          THE COURT:  Okay, July 25th at 9 a.m., Ms. Speers.  And you

8   can appear by telephone at that time too to tell this Court whether you're

9   going to continue Pro Per or whether you have another counsel that is

10   going to appear as attorney of record you in this case.

11          Now, here's the other -- do you have authority?  Are you now

12   saying that you have authority to represent JEM Contracting in this

13   case?

14          MR. MONDEJAR:  Well, at my current understanding is that

15   I'm still on as JEM's --

16          THE COURT:  No, you've never been, so you -- my answer is

17   are you now saying you have been authorized by whoever the agent is

18   at JEM Contracting to be their attorney of record at this time?  Are you

19   making an --

20          MR. MONDEJAR:  Well, it's been my -- well --

21          THE COURT:  I can't do your understandings, I need you to

22   have you give an affirmative, are you at this point saying that you are

23   representing JEM Contracting Company and you've been retained to do

24   that as an Officer of the Court.

25          MR. MONDEJAR:  I've been retained to represent JEM --

1         THE COURT:  Okay.

2         MR. MONDEJAR:  -- to file the motion to dismiss --

3         THE COURT:  Well --

4         MR. MONDEJAR:  -- and to --

5         THE COURT:  -- you can't be retained, either you make an

6    appearance, a general appearance in this courtroom, there's not an

7    specially appearing --

8         MR. MONDEJAR:  Okay, I'm appearing on behalf of JEM.

9         THE COURT:  Okay, so now --

10        MR. MONDEJAR:  Yes.

11        THE COURT:  -- the record will reflect that you are Mr.

12   Mondejar, at this point forward representing the Defendant JEM --

13        MR. MONDEJAR:  That's correct.

14        THE COURT:  -- Contracting Company.

15        MR. MONDEJAR:  That's right.

16        THE COURT:  So we will correct so it is in Odyssey, okay?

17        MR. MONDEJAR:  Yeah, this will be great to clarify everything

18   like this.

19        THE COURT:  Okay.  No I hope so, I have to for everybody's

20   sake. Okay thank you very much.

21        MR. HOGAN:  Just for clarity's sake, --

22        THE COURT:  Yeah.

23        MR. HOGAN:  -- Your Honor, on the motion -- the oral motion

24   to withdraw do you want a separate --

25        THE COURT:  I granted that.


17

1          MR. HOGAN:  -- order?

2          THE COURT:  Why don't you put it in the same order?

3          MR. HOGAN:  Just put it in the same order?

4          THE COURT:  Do you mind?

5          MR. MONDEJAR:  Just put it in the --

6          THE COURT:  So that we have so that we have one order and

7    could your prepare it?

8          MR. HOGAN:  I will do that.

9          THE COURT:  Okay, and find under the basis under the

10   EDCR.

11         MR. HOGAN:  Fair enough.

12         THE COURT:  That the Court found a basis.  I appreciate it,

13   thank you.

14         MR. HOGAN:  Thank you, Your Honor.

15         MR. MONDEJAR:  May I ask, Your --

16         THE COURT:  Alright, thank you, Ms. Speer.  Yes --

17         MR. MONDEJAR:  -- may I ask, Your Honor, what's the -- July

18   25th --

19         MS. SPEER:  Thank you.

20         THE COURT:  Yes, oh I'm sorry, July -- oh do it again.

21         THE COURT CLERK:  July 25th at 9 a.m.

22         MR. MONDEJAR:  Is that just a status check?

23         THE COURT:  That's on the status check to see if Ms. Speer

24   has retained counsel.

25         MR. MONDEJAR:  May I ask, is the trial setting still on or -- no

1   that's --

2           THE COURT:  No, we'll have to redo the trial setting because

3   the bench trial is 7/30.  So I'm going to -- here's what I'm going to do, I'm

4   going to keep the -- no I can't do that.  I'm going to vacate --

5           MR. HOGAN:  Your Honor --

6           THE COURT:  -- let me just do this.

7           MR. HOGAN:  -- before you do that, I got summary judgment

8   on one and default on the other, there is no trial.

9           THE COURT:  I was going to address that.

10          MR. HOGAN:  Okay.

11          THE COURT:  You probably need to do a motion, but I want

12  to give her -- how do I -- should I not give her that long, because I'd like

13  to have it before 7/18?  I wanted this cleaned up by the calendar call of -

14  - so what's the Wednesday before 7/18?

15          THE COURT CLERK:  We can do it on the 12th.

16          THE COURT:  Okay.  I'm going to change that 7/25 date to

17  7/12.  Thank you for bringing that, I should have --

18                        [Colloquy with Court and staff]

19          THE COURT:  The 11th, I'm -- we got -- 7/11/2018 at 9 a.m. I'll

20  do the status check on whether she's retained counsel.

21          MR. MONDEJAR:  9 a.m.?  7/11.

22          THE COURT:  9 a.m.

23          MR. MONDEJAR:  Okay.  Let me check my --

24          THE COURT:  And you will -- if you need to be here on behalf

25  of JEM Contracting Company, but you need to -- well I should have -- I

1  can't say anything.

2          MR. MONDEJAR:  9 a.m.?  Okay.

3          THE COURT:  Okay.

4          MR. MONDEJAR:  May we trail it to 9:30 or something?

5          THE COURT:  Sure.

6          MR. MONDEJAR:  Get that to 9:30.

7          THE COURT:  I -- it's 9 a.m.  I -- I'm very nice, if other people

8  are here, if you're not here till 9:30 you'll be okay.

9          MR. MONDEJAR:  Yes, I have a try out that day, so.

10          THE COURT:  That's fine.  I'm --

11          MR. MONDEJAR:  Okay.

12          THE COURT:  -- I'll work with you.  If for some reason, just let

13  me know.

14          MR. MONDEJAR:  Okay, thank you.

15          THE COURT:  Okay, alright.  Thank you.

16          MR. MONDEJAR:  I appreciate it.

17          THE COURT:  You're welcome.

18                  [Proceeding concluded at 10:42 a.m.]

19

20

21  ATTEST:  I do hereby certify that I have truly and correctly transcribed the
   audio/video proceedings in the above-entitled case to the best of my
22  ability.

23

24

25

Melissa Burgener
Court Recorder/Transcriber

20

# EXHIBIT B – DANJON FRAUDULENTLY INDUCED NOTE

# PROMISSORY NOTE

Loan Date: May 18, 2016

Principal $30,000.00

Borrower:
JEM Contracting Co., LLC
BWM, LLC
and Elissa Speer, individually
151 Talman Street North
Norwich, CT 06360

SS # 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

FOR VALUE RECEIVED, the undersigned maker(s) JEM Contracting Co., LLC, BWM, LLC and Elissa Speer, promise(s) to pay to the order of DANJON CAPITAL, Inc. ("Lender"), a Nevada Corporation, whose address is 800 N. Rainbow Blvd., Suite 125, Las Vegas, NV 89107 or at such other place as the holder hereof may from time to time designate in writing, in collected funds or U.S. legal tender, the sum specified above as the Face Amount of this Promissory Note, together with interest accrued from the date hereof on the unpaid principal balance at the interest rate or rates per monthly specified below, until paid in full. The undersigned maker(s) also promise(s) to pay (i) late charges, fees, credit insurance premium charges (if any) and other fees and charges as specified herein, and (ii) the cost of all fees paid or to be paid to public officials for recording, perfecting, maintaining, canceling and/or releasing any security interest in any Collateral securing this Promissory Note. Interest is to be accrued and principal, interest and credit insurance premiums are to be paid as follows:

1.  **INTEREST RATE and PAYMENT TERMS.** Interest shall be calculated on an "actual/360" daily simple variable interest basis. Unless the default rate described in section 6 below applies, interest shall accrue on the outstanding principal balance:

    a)  The principal sum of Thirty Thousand Dollars (U.S. $30,000.00), with interest on the unpaid principal balance from June 1, 2016, until paid, with final payment occurring no later than June 1, 2017.

    b)  Principle and interest shall be payable at Chase Bank, N.A. Account of DANJON Capital, Inc., or such other place as Note Holder may designate, in weekly payments for 24 months of One Thousand, Eighteen and 69/100 Dollars (U.S. $1,018.69) (plus taxes), due on the 1st day of each week, beginning May 30, 2016.

2.  **NOTE DUE AND PAYABLE:** This note is due and payable prior to June 1, 2017.

3.  **FEES.** The fees for this promissory note are deferred to June 1, 2017 and are $ 5,000.00 if this note is not paid off prior to that date.

4.  **LATE CHARGE.** There will be a late charge for payments received after the 1st of the week is fifteen percent (15 %) of the unpaid portion of any payment or $ 300.00 whichever is higher.

5.  **RETURNED CHECK FEE.** Maker will pay a fifteen percent (15%) or $300.00, whichever is higher, processing fee for each check or other form of remittance given for payment on this Promissory Note that is dishonored or returned unpaid.

6.  **INTEREST AFTER DEFAULT.** After an event of default occurs (including failure to pay at Maturity), Lender may, at its option and without notice to any obligor (except for any notice required by applicable law), increase the interest rate on this Promissory Note one or more times to a rate or rates (each a "default rate") to be determined by Lender in its sole discretion. However, (a) the default rate shall never exceed two-percent (2%) per monthly, and (b) Lender will not increase the interest rate to a default if doing so is prohibited by applicable law. If the default is subsequently cured, Lender may, at its option and without notice to any obligor, reduce the interest rate on this Promissory Note to the rate that would have applied had no event of default occurred. To the extent permitted by applicable law, the interest rate provided for in this Promissory Note (including any default rate then in effect) or the legal rate of interest on judgments, whichever greater, shall apply to any indebtedness due following the entry of a judgment relating to the collection of this Promissory Note.

7.  Left blank intentionally.

8.  **PAYMENTS.**

(A)  This Promissory Note may be prepaid in part or in full at any time without penalty unless (i) section 4 and 17 of this Promissory Note provides for a prepayment penalty, (ii) this Promissory Note is modified, amended or supplemental to provide for a prepayment penalty, or (iii) any loan commitment letter or loan agreement given, received or signed in connection with this loan transaction maker of maker's obligation to continue making payments as and when due under the terms of this Promissory Note. Except as otherwise required by applicable law, all loan fees and other prepaid finance charges are earned fully as of the date of this Promissory Note and will not be subject to refund upon early payment (whether voluntary or as a result of a default).

(B)  Unless otherwise noted, each consecutive payment is due on the same day of the calendar period specified. Credit insurance premiums, if applicable, are due at the same time interest is due.

(C)  Lender shall apply payments to this Promissory Note as of the business day Lender receives U.S. legal tender or collected funds. U.S. legal tender shall be deemed received on the Lender's business day when received. Collected funds shall be deemed received on Lender's business day when cleared or otherwise irrevocably available to Lender. Lender's "business day" shall mean the business day for Lender's transactions between the applicable cut-off times on consecutive banking days.

(D)  Any item delivered to Lender as payment hereunder which is returned or charged back to Lender shall be considered as not having been received by Lender.

(E)  **This Promissory Note is secured by a lien on real property.**  Payments received will be applied in the following order: (i) unpaid credit insurance premiums, if any, accrued to the date of payment or the date payment is due (at Lender's option); (ii) unpaid interest accrued to the date of payment or the date payment or the date payment is due (at Lender's option); and (iii) the unpaid principal balance.  If this Promissory Note is secured by a home occupied or to be occupied by the borrower, unpaid late charges, returned check fees, collection costs and other charges due may be satisfied from any payment then due and before the payment is applied to the general reduction of the unpaid principal; otherwise, at Lender's option, they may be satisfied from any payment received either (i) before the application of that payment in the foregoing manner, or (ii) after the application of that payment to the unpaid principal component of any payment then due and before the payment is applied to the general reduction of the unpaid principal balance. If maker fails to make any installment payment within 5 days after it is due, then, in accordance with the foregoing order, subsequent payments received shall be applied first to the past due balance in the order in which the installments were due. Lender may, to the extent permitted by applicable law, impose a separate late charge for each subsequent installment that becomes 5 days or more past due.

(F)  Maker agrees not to send Lender payments marked "Paid in Full," "Without Recourse," or similar language. If maker sends such a payment, Lender may accept it without losing any of Lender's rights under this Promissory Note, and maker will remain obligated to pay any further sums owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: DANJON Capital, Inc. care of the address above.

9.  **WAIVER OF JURY TRIAL; OTHER WAIVERS.  To the extent permitted by applicable law, Lender and each obligor voluntarily and knowingly waive the right to a jury trial in any action, proceeding or counterclaim brought by Lender or any obligor against the other or others arising out of or in any way related to this Promissory Note or any related Loan Document.** To the extent permitted by applicable law, each obligor on this Promissory Note (whether maker, accommodation maker, guarantor or endorser) hereby: (a) waives notice of delinquency, notice of default, notice of intent to accelerate, notice of acceleration, demand for payment, presentment for payment, notice of protest, protest, notice of nonpayment, and notice of dishonor; (b) agrees that any extension of time for the payment of this Promissory Note shall not release or reduce the liability of any obligor, and further waives all notice of each such extension; (c) waives the benefits of any statutory or common law provision requiring the discharge or limiting the liability of a surety, and all benefits, claims, rights and defenses based on suretyship or impairment of collateral, including any benefits, claims, right or defenses any obligor may have (i) pursuant to 3419 and  3605 of the California Commercial Code, as amended from time to time, or (ii) arising out of an election of remedies by the Lender, even though that election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed the obligor's right of subrogation and reimbursement against the principal by the operation of 580d of the California Code of Civil Procedure or otherwise; (d) waives any homestead or exemption laws and any rights thereunder affecting the full collection of this Promissory Note./ (e) waives the benefits of any legal or equitable doctrine or principle of marshalling; and (f) agrees that none of the following shall release or reduce the liability of any obligor in any manner whatsoever: (i) the release of any one or more of the

obligors or any settlement or compromise with any one or more of the obligors with respect to this Promissory Note, any Security Instrument or any of the other Loan Documents; (ii) the taking or compromise, modification, substitution, exchange, impairment, waiver, release or surrender of any Collateral or Security Instrument taken as security for this Promissory Note or for performance under any Security Instrument or any of the other Loan Documents; or (iii) the amendment, modification, extension, renewal, increase, or consolidation of this Promissory Note, any Security Instrument or any of the other Loan Documents, and each obligor waives notice of each such release, settlement, compromise, taking, substitution, exchange, impairment, waiver, surrender, amendment, modification, extension, renewal, increase, or consolidation. Lender shall have no duty whatsoever to monitor or verify the use of the proceeds of this Promissory Note or to ensure or verify that any loan proceeds are used for the purpose described in any of the Loan Documents. Each obligor hereby waives and agrees not to assert against Lender any claim or defense whatsoever based on (a) the actual use of loan proceeds, (b) the failure of any loan proceeds to be used for any purpose describe in any of the Loan Documents and/or (c) Lender's knowledge that loan proceeds were not used for the purpose described in any of the Loan Documents. Lender may delay or forego enforcing any of its rights or remedies under this Promissory Note without being deemed to have waived or forfeited such rights.

10.    **EVENTS OF DEFAULT.** This Promissory Note, each Security Instrument and the other Loan Documents shall be in default upon the happening of any of the following "events of default":

(a)    Any payment is not made as and when due according to the terms of this Promissory Note;

(b)    Default in the performance of any obligation, covenant or condition contained in, or the occurrence of any other event of default under, this Promissory Note, any Security Instrument or any of the other Loan Documents.

(c)    Default by any obligor under any other Promissory Note, obligation or indebtedness owed to Lender (whether such Promissory Note, obligation or indebtedness now exists or is hereafter made), or default in any obligation or instrument securing any such Promissory Note, obligation or indebtedness;

(d)    Any warranty, representation or statement made or furnished to Lender by or on behalf of any maker or guarantor in connection with this loan transaction, property sale, or to induce Lender to make this loan, is false or misleading in any material respect either now or at the time made or furnished;

(e)    The death, dissolution, business failure, liquidation, or termination of existence of any make or guarantor;

(f)    The corporate or legal existence of any maker or guarantor is terminated or suspended, or any maker or guarantor fails to maintain its corporate or legal existence in good standing.

(g)    Any guarantor disputes the validity of, or guarantor's liability under, any guaranty of this Promissory Note, or any guarantor revokes or attempts to revoke the guarantor's prospective liability under any guaranty of this Promissory Note for future advances or obligations;

(h)    The sale, transfer or conveyance without Lender's prior written consent of more than 10% of the voting stock, partnership interests or limited liability company interests, as the case may be, of any maker or guarantor that is a corporation, partnership, limited partnership or limited liability company;

(i)    Any voluntary or involuntary bankruptcy, reorganization, insolvency proceeding, receivership, or other similar proceeding is commenced by or against any maker or guarantor as debtor under any federal or state law, or any maker or guarantor becomes insolvent, makes any assignment for the benefit of creditors, or conveys substantially all of its assets;

(j)    The entry of any final monetary judgment or the assessment and/or filing of any tax lien against any maker or guarantor that is not satisfied, released or discharged within 30 days of entry.

(k)    The issuance of any writ of garnishment, attachment, levy, seizure order, or forfeiture order against any property of, debts due, or rights of any maker or guarantor, including the commencement of any action or proceeding to seize monies of any maker or guarantor on deposit in any account with Lender; or

(l)    Lender in good faith believes that the prospect of timely payment or other performances by any maker or guarantor is impaired or Lender otherwise in good faith deems itself or its collateral insecure.

If an event of default occurs, Lender shall not be further obligated to advance loan proceeds.

11.    **NOTICE OF DEFAULT AND RIGHT TO CURE; ACCELERATION.** If an event of default occurs, Lender shall give such notice of          default and opportunity to cure as is required by California Law. If (a) an event of default occurs and maker is not entitled to notice of default and the opportunity to cure, or (b) an event of default occurs and the default is not cured during any applicable cure period following the giving of any required notice of default, then this Promissory Note shall, at Lender's option, become due and payable in full without demand or notice of any kind. In addition, if Lender has the right to accelerate this Promissory Note under the provisions of any Security Instrument as a result of Collateral being sold, transferred, conveyed or encumbered, Lender shall not be further

obligated to advance loan proceeds and this Promissory Note shall, at Lender's option and following the giving of any required notice and opportunity to cure, become due and payable in full without demand or notice of any kind. Lender's failure to exercise any of the foregoing options shall not constitute a waiver of any other default or right to exercise such options. Waiver by Lender of any default or right to accelerate shall not operate as a waiver of any other default or right to accelerate or of the same default or right to accelerate on a future occasion. Except to the extent California law permits a default to be cured and the obligation evidenced by this Promissory Note reinstated as though not acceleration had occurred, acceptance by Lender of payment of less than the entire unpaid balance after acceleration    of this Promissory Note shall not cure a default or waive an acceleration, and Lender shall be entitled to proceed with its rights and remedies as Promissory Note holder (and as secured party, if applicable). If an event of default occurs or this Promissory Note is accelerated, interest and credit life insurance premium charges, if any, shall continue to accrue on the unpaid balance.

12.    **COSTS AND EXPENSES.** If any lawsuit, reference or arbitration is commenced which arises out of or is related to this Promissory Note or any of the Loan Documents, the prevailing party or parties shall be entitled to recover from the other party or parties such sums as the court, referee or arbitrator may adjudge to be reasonable attorneys' fees (including allocated costs of services of in-house counsel) in the action or proceeding, in addition to costs and expenses otherwise allowed by law. In all other situations, including any bankruptcy or insolvency proceeding, maker agrees to pay all of Lenders' costs and expenses, including reasonable attorney's fees (including allocated costs for services of Lender's in-house counsel) which may be incurred in any effort to collect or enforce this Promissory Note or any of the Loan Documents. In addition, maker agrees to pay all of Lender's expenses to (i) trace and/or locate any obligor; (ii) collect this Promissory Note in whole or in part and, where applicable, reinstate the loan; (iii) trace, locate, recover, repossess, transport, store, hold, and assess any Collateral (including environmental assessments and appraisal expenses); and (iv) protect the Collateral and Lender's interest in the Collateral including the cost of any bonds. Costs and expenses recoverable by Lender under this section shall include sums that may not be taxable as court costs, including, without limitation, all costs and expenses incident to appellate, bankruptcy, post- judgment and alternative dispute resolution proceedings. Maker shall be liable for the payment of all such costs and expenses as an additional obligation under this Promissory Note. All such costs and expenses shall be due and payable to Lender immediately upon Lender's payment of the same, may be added to the principal balance due and, to the extent permitted by law, shall bear interest at the rate specified in this Promissory Note. The repayment of such costs and expenses shall be secured by all Collateral and by each Security Instrument. Lender shall have no duty to release Collateral until such costs and expenses, in addition to all other obligations secured by the Collateral, are paid in full.

13.    **COMPOUND INTEREST; INTEREST CALCULATION METHOD.** Accrued but unpaid interest may be added to the outstanding principal balance and accrue interest at the then current rate of interest due under this Promissory Note from time to time. Interest on an "actual/360" daily simple interest basis is determined by applying the ration of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.

14.    **MISCELLANEOUS.** This Promissory Note shall be the joint and several obligation of each maker. The proceeds of this Promissory Note shall be used solely for business, commercial or agricultural purposes and not for any personal, family or household use. Lender may delay or forego enforcing any of its rights or remedies under this Promissory Note without being deemed to have waived or forfeited them. No waivers or modifications of the terms of this Promissory Note shall be valid unless they are reduced to writing and duly executed by the party to be charge therewith. This Promissory Note is subject to the provisions of each loan commitment letter and loan agreement given, received or signed in connection with this loan transaction, the terms and conditions of which are incorporated herein by reference. If the terms of any such commitment letter or loan agreement conflict with the terms of this binding upon each obligor and their respective heirs, executors, administrators, successors and assigns, and shall inure to the benefit of and be enforceable by Lender and its successors, transferees, an assigns. This Promissory Note and all guaranties and endorsements of this Promissory Note have been entered into in the State of California and shall be deemed to have been made under and shall be governed by federal law and, except to the extent preempted by federal law, by the laws of the State of California in all respects, including matters of construction, validity and performance. Any action, suit or proceeding relating to this Promissory Note or any guaranty or endorsement of this Promissory Note may be instituted and prosecuted in the state or federal courts of the State of California, and each obligor waives any and all defenses relating to the jurisdiction and venue of such courts. Any photocopy, microfilm, microfiche or optical image of this Promissory Note may be presented as evidence in lieu of the original in any legal proceeding to enforce the terms of this Promissory Note and shall have the same validity as the original.

15. **DEFINITION OF TERMS.** As used herein, (a) "maker" means each maker who signs this Promissory Note, jointly and severally commonly known as borrower; (b) "guarantor" means each guarantor who guarantees the payment of all or any portion of this Promissory Note; (c) "obligor" means each maker, guarantor, endorser, and surety of all or any portion of this Promissory Note; (d) this "Promissory Note" refers to this instrument and to the indebtedness evidenced by this instrument; (e) "Security Instrument" includes each and every pledge, assignment, security agreement, guaranty, mortgage, deed to secure debt, deed of trust, hypothecation, or other security instrument or arrangement given to secure repayment of all or any portion of this Promissory Note or performance under any of the Loan Documents, whether now existing or hereafter arising; (f) "Collateral" means any collateral that secures repayment of this Promissory Note; (g) "Loan Documents" included all documents executed and delivered in connection with the loan transaction evidenced by this Promissory Note (including this Promissory Note, each Security Instrument, any loan commitment letters, any loan agreements and all loan application documents), whether now existing or hereafter arising; and (h) "Lender" means A1B2, LLC Bank and its successors and assigns. The terms "Promissory Note" "Security Instrument" and "Loan Documents" include all amendments, modification, extensions and renewals thereof. Of the terms of any of the Loan Documents conflict with the terms of this Promissory Note, the terms of this Promissory Note shall control.

16. **DUE ON SALE PROVISION IN DEED OF TRUST.** This Promissory Note is secured, at least in part, by a deed of trust on California real property. The deed of trust contains the following "due on sale" provision:

**Important: Do not sign this form until you read it, and carefully and understand its content**

BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ, RECEIVED AND UNDERSTAND THIS HAZARD INSURANCE DISCLOSURE.

By: JEM Contracting Co., LLC and BWM, LLC


_Elissa Speer_
Elissa Speer (Unmarried)- Borrower


STATE OF CONNECTICUT
COUNTY OF ___ALL CT___


On _05-19-2016_ , before me, ___Elissa Speer Member___ , personally
   (Date)                 (Name, Title of the Officer)
appeared ___Elissa Speer___ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Connecticut that the foregoing is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

_Ex : 08/31/2030_

## CERTIFICATE OF SERVICE

I, Elissa Speer, hereby certify that a copy of the foregoing was transmitted to the

following Counsel of Record via PACER's ECF filing system upon its filing:

*Elissa Speer*
**Elissa Speer**

Andrew Henry Pastwick
Law Office of Andrew H. Pastwick
1810 E. Sahara Avenue
Suite 120
Las Vegas, NV 89104
702-866-9978
Fax: 702-369-1290
Email: apastwick@pastwicklaw.com